UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE, KENTUCKY
ELECTRONICALLY FILED

SHERRY HOZA, JOSEPH CHAPPELL, LISA
TROVER, and MICHAEL DANIEL,

      Plaintiffs,

v.

JEFFERSON COUNTY TEACHERS
ASSOCIATION;

KENTUCKY EDUCATION ASSOCIATION;

NATIONAL EDUCATION ASSOCIATION; and

BOARD OF EDUCATION OF JEFFERSON
COUNTY, KENTUCKY;

      Defendants.

**CLASS ACTION
COMPLAINT**

3:09cv-764 M

Civil Action No. _____

**PRELIMINARY STATEMENT**

1.    The plaintiff public school teachers and other certificated employees bring this action individually and as a class action, challenging the collective bargaining agreement ("CBA") between their employer and a union, and the practices and policies implementing the CBA, because (1) they unlawfully and unconstitutionally restrict the right to resign from the union and discontinue the seizure of union dues; (2) they unlawfully and unconstitutionally infringe on the right to join and pay dues only to the private organizations of one's choosing, by transforming employees into union members and seizing dues without their individual affirmative consent; (3), they unlawfully impose exclusive union representation on certificated employees who have not voluntarily and affirmatively joined the union; and

(4) they provide for automatic union membership in violation of the Constitution and Bylaws of the JCTA. As used herein, the term "certificated employees" refers to all those Jefferson County Public School employees designated in Article 3 of the CBA as being represented by defendant Jefferson County Teachers Association ("JCTA").

2.    The plaintiffs request certification of a plaintiff class and two subclasses as detailed herein. The plaintiffs seek declaratory, monetary, equitable and preliminary and permanent injunctive relief, attorneys fees and costs, on behalf of themselves and their respective class members.

## JURISDICTION AND VENUE

3.    This action arises under the Constitution and laws of the United States, particularly the First, Fifth, and Fourteenth Amendments to the United States Constitution. The jurisdiction of this Court is therefore invoked under 28 U.S.C. § 1331.

4.    The jurisdiction of this Court is also invoked under 28 U.S.C. § 1343 because this is an action under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, regulation and usage, of rights, privileges and immunities secured to the plaintiffs by the Constitution of the United States, particularly the First, Fifth, and Fourteenth Amendments thereto.

5.    This is a case of actual controversy in which the plaintiffs are seeking a declaration of their rights under the Constitution of the United

States.  Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of the plaintiffs and grant further necessary and proper relief based thereon, including preliminary and permanent injunctive relief, pursuant to Rule 65, FED.R.CIV.P.

6.    Additionally, this action involves claims arising under the laws of the Commonwealth of Kentucky which are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy—that of public sector employees seeking relief from forced unionism imposed through a CBA and the practices and policies implementing it.  The state law claims consist of declaratory judgment challenges to the <u>ultra vires</u> imposition of exclusive representation on the class in violation of state law, and to the <u>ultra vires</u> automatic union membership and dues seizure provisions which violate the union constitutions and bylaws, and a claim of unjust enrichment of the defendant unions resulting from the unconstitutional, unlawful and <u>ultra vires</u> CBA provisions.  The Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367.

7.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because each of the defendants reside, have offices and/or conduct business in the judicial district of the United States District Court for the Western District of Kentucky.

8.    Pursuant to Local Rules 3.2 and 8.1(c), a substantial and

predominant part of the events or omissions giving rise to the claim occurred within the Louisville jury division of the Western District of Kentucky.

### PARTIES

### Plaintiffs

9.    Plaintiffs Sherry Hoza, Joseph Chappell, Lisa Trover, and Michael Daniel are each employed in the Jefferson County Public Schools by the defendant Board of Education of Jefferson County, Kentucky, within the Western District of Kentucky.    The plaintiffs are employees from whose wages union fees are seized, and to whom the CBA purports to apply.

### Defendants

10.    On information and belief, the defendant Jefferson County Teachers Association ("JCTA") is an unincorporated voluntary association formed and existing under the laws of the Commonwealth of Kentucky.    The JCTA conducts business and maintains its offices within the Western District of Kentucky.    The JCTA is a union which the defendant Board of Education has recognized as the exclusive representative of all its certificated employees.    By contractual agreement, the JCTA is a local affiliate of the defendants Kentucky Education Association ("KEA") and National Education Association ("NEA"), the three of which are collectively referred to herein as the defendant unions.

11.    On information and belief, the defendant Kentucky Education Association ("KEA") is an unincorporated voluntary association formed and

4

existing under the laws of the Commonwealth of Kentucky. The KEA conducts business and has members within the Western District of Kentucky. By contractual agreement, the KEA is a state affiliate of defendant NEA. The KEA pays part of the salaries of the UniServ directors of the JCTA.

12. On information and belief, the National Education Association ("NEA") is an unincorporated voluntary association and a labor organization which conducts business and has members within the Commonwealth of Kentucky and the Western District of Kentucky. The NEA pays part of the salaries of the UniServ directors of the JCTA.

13. The defendant Board of Education of Jefferson County, Kentucky, (referred to herein as the "Board of Education" or the "Board") is a body politic and corporate existing by virtue of KRS 160.160 *et seq.* and is charged with the responsibility for management and control of the Jefferson County Public Schools.

14. The Board's duties include managing the funds and properties of the schools, fixing compensation for its employees including the plaintiffs and all certificated employees, making rules and regulations for the qualifications and duties of its employees, and it is empowered by state law to make contracts and to sue and be sued. The Board is a public employer which conducts its business and operations within the Commonwealth of Kentucky and within the Western District of Kentucky. The Board has entered into the CBA with the defendant JCTA.

## CLASS ALLEGATIONS

15.   The plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of a class defined as all individuals who are or were certificated employees of the Board of Education at any point between October 2008 to the present.  The term "certificated employees" as used herein refers to all employees designated in Article 3 of the CBA as being represented by the defendant JCTA, even though some such individuals may not hold certificates issued by the Commonwealth of Kentucky.  The class also includes two subclasses, subclass A and subclass B, defined further below.

16.   The class is so numerous that joinder of all members is impracticable.  While the exact number of certificated employees within the class is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are approximately five thousand members of the class.  Certificated employees of the Board during the relevant period may be identified from records maintained by the defendants and may be notified by mail of the pendency of this action, using an opt-out form of notice similar to that customarily used in class actions.

17.   The named plaintiffs have been employees of the Board of Education from prior to October 2008 and continuing to the present, and are within the set of Board employees designated in Article 3 of the CBA as being represented by the defendant JCTA and thus are "certificated employees" for

the purposes of this lawsuit. The individual claims of the named plaintiffs are typical of the claims of other members of the class as all members of the class are similarly affected by the defendants' wrongful conduct in imposing exclusive representation on them regardless of their consent and entering an unlawful and <u>ultra</u> <u>vires</u> agreement.

18. Common questions of law and fact exist as to the class and predominate over any questions solely affecting individual members of the class. Among the questions common to the class are:

- whether the CBA has the effect of imposing unlawful exclusive representation on certificated employees of the Board; and

- whether the exclusive representation and forced unionism provisions of the CBA are contrary to law and <u>ultra</u> <u>vires</u>, being outside the legitimate scope of authority of the Board of Education.

19. The named plaintiffs will fairly and adequately protect the interests of the other certificated employees in the class.

20. Declaratory and injunctive relief are appropriate with respect to the class as a whole because the defendants have acted, and have refused to act, on grounds applicable generally to the entire class.

21. A class action is superior to all other available methods for the fair and efficient adjudication of this matter because the prosecution of separate actions by individual class members would unduly burden the Court

and create the possibility of conflicting decisions. Furthermore, as only declaratory and injunctive relief is sought for the general class, the expense and burden of individual litigation make it onerous and unfeasible for members of the class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

### Subclass A

22. Plaintiffs Sherry Hoza, Joseph Chappell, Lisa Trover, and Michael Daniel further bring this action on behalf of members of subclass A, which is defined as:

> All certificated employees who, at any point between October 2008 and June 2009, had money seized from their pay for the benefit of JCTA and/or its affiliated unions, and who have after July 11, 2005 either sought, are seeking, or will during this litigation seek to resign from the JCTA and/or to stop the seizure of money for the benefit of JCTA or its affiliated unions from their pay.

23. Subclass A is so numerous that joinder of all members is impracticable. While the exact number of certificated employees within subclass A is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are at least one hundred members of subclass A. Many JCTA members have sought or will during this litigation seek to resign from the defendant unions and/or stop

8

the seizure of dues. Certificated employees of the Board who have sought to resign from the union and/or stop the dues seizures during the term of the CBA may be identified from records maintained by the defendants and may be notified by mail of the pendency of this action, using an opt-out form of notice similar to that customarily used in class actions.

24. The individual claims of plaintiffs Sherry Hoza, Joseph Chappell, Lisa Trover, and Michael Daniel are typical of the claims of other members of subclass A as all members of subclass A are similarly affected by the defendants' wrongful conduct in rebuffing and refusing their efforts to resign from union membership and/or to terminate union fee seizures. The named subclass A plaintiffs have each sought and/or attempted to resign from union membership and/or stop the seizure of dues from their pay, some of them repeatedly.

25. Common questions of law and fact exist as to subclass A and predominate over any questions solely affecting individual members of the subclass. Among the questions common to subclass A are:

- whether the defendants can lawfully deprive or restrict certificated employees of the right to resign from the defendant unions;

- whether the defendants can lawfully deprive or restrict certificated employees of the right to discontinue the seizure of union fees;

- whether the defendants have implemented the CBA through policies and practices of failing and refusing to honor union resignations and the revocation of dues as required by law; and

- whether the defendant unions have been unjustly enriched as a result of the unlawful and <u>ultra</u> <u>vires</u> provisions of the CBA and its implementing practices and policies.

26. Plaintiffs Sherry Hoza, Joseph Chappell, Lisa Trover, and Michael Daniel will fairly and adequately protect the interests of the other certificated employees in subclass A.

27. Declaratory and injunctive relief are appropriate with respect to subclass A because the defendants have acted, and have refused to act, on grounds applicable generally to subclass A.

28. A class action is superior to all other available methods for the fair and efficient adjudication of this matter because the prosecution of separate actions by individual subclass A members would unduly burden the Court and create the possibility of conflicting decisions. Furthermore, as the damages and deprivation suffered by individual subclass A members may be relatively small, the expense and burden of individual litigation make it onerous and unfeasible for members of the class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

**Subclass B**

29.   Plaintiff Sherry Hoza further brings this action on behalf of members of subclass B, defined as:

> All certificated employees who, at any point between October 2008 and June 2009, had money seized from their pay for the benefit of JCTA and/or its affiliated unions, _and_ from whom individual affirmative consent to membership in the JCTA or its affiliated unions has not or will not be given.

30.   Subclass B is so numerous that joinder of all members is impracticable.   While the exact number of certificated employees within subclass B is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are at least one hundred members of subclass B.   On information and belief, the defendant Board of Education typically hires several hundred new certificated employees each year, and per the CBA has seized union fees from the pay of all certificated employees who did not expressly decline union membership in writing within ten calendar days of employment or July 1, 2005, whichever is earlier.   Many certificated employees are not properly informed of these matters during the window period and/or do not want to join the defendant unions voluntarily but missed the window period.   Certificated employees of the Board who have not given affirmative consent to union membership may be identified from records maintained by the defendants and may be notified

by mail of the pendency of this action, using an opt-out form of notice similar to that customarily used in class actions.

31.   The individual claims of plaintiff Sherry Hoza are typical of the claims of other members of subclass B as all members of subclass B are similarly affected by the defendants' wrongful conduct in purportedly transforming them into union members and seizing union dues from their pay without their affirmative consent.

32.   Common questions of law and fact exist as to subclass B and predominate over any questions solely affecting individual members of the subclass.  Among the questions common to subclass B are:

- whether the defendants can lawfully transform certificated employees into union members with ongoing and irrevocable union dues obligations and other union membership obligations throughout the CBA term without the certificated employee's individual affirmative consent; and

- whether the defendants can lawfully deprive or restrict certificated employees of the right to freely and independently exercise their freedom of association and non-association with regard to financially- and morally-obligated membership in private organizations; and

- whether the defendant unions have been unjustly enriched as a result of the unlawful and <u>ultra</u> <u>vires</u> provisions of the CBA and its implementing practices and policies.

33.   Plaintiff Sherry Hoza will fairly and adequately protect the interests of the other certificated employees in subclass B.

34.   Declaratory and injunctive relief are appropriate with respect to subclass B because the defendants have acted, and have refused to act, on grounds applicable generally to subclass B.

35.   A class action is superior to all other available methods for the fair and efficient adjudication of this matter because the prosecution of separate actions by individual subclass B members would unduly burden the Court and create the possibility of conflicting decisions.  Furthermore, as the damages and deprivation suffered by individual subclass B members may be relatively small, the expense and burden of individual litigation make it onerous and unfeasible for members of the class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## Class Counsel

36.  The plaintiffs' counsel have extensively identified and investigated potential claims in this action, are committed to dedicating the resources necessary to adequately representing the respective classes, they are experienced in handling complex litigation and the types of claims

asserted in the action, and should be appointed counsel for the class and its constituent subclasses.

## FACTS:

37.  In July 2005, the defendants JCTA and Board of Education entered into a five-year collective bargaining agreement (the "CBA") to establish and govern the terms and conditions of employment for a certain set of Jefferson County Public School employees described in CBA Article 3 (and collectively referred to herein as "certificated employees" for simplicity, although some employees within this set do not hold a certificate issued by the Commonwealth of Kentucky), including plaintiffs and all class members. A copy of the CBA as originally executed in 2005 is attached and incorporated as Exhibit 1.

38.  The CBA purports to apply to all certificated employees, including those who are not members of the JCTA, and to establish the terms and conditions of their employment.

39.  In CBA Article 3, the Board recognizes the JCTA as the official representative of all certificated employees, including the plaintiffs and all class members, as well as those who are not members of the JCTA.

40.  In Article 4, the CBA requires the Board to seize union fees from a certificated employee's wages and transforms the employee into a JCTA member, unless the employee, within the first ten calendar days after the effective date of the CBA and/or acceptance of employment, in writing

14

declines JCTA membership and gives notice that union fees are not to be deducted from his or her wages. Failure to timely revoke or decline membership results in automatic membership in the union.

41. Per Article 34, the CBA was entered into by its parties on July 11, 2005, but was retroactive to July 1, 2005, thus eliminating the ten calendar days following the effective date of the CBA for employees to decline membership and revoke dues deductions pursuant to its terms.

42. Copies of the CBA were first widely distributed to certificated employees in August 2005 after the school year began in Jefferson County.

43. The defendants Board of Education and JCTA have actual knowledge of the terms of the CBA.

44. The defendants KEA and NEA, by and through their authorized agents, officials and UniServ directors of the JCTA, have actual knowledge of the terms of the CBA.

45. The defendant unions require a unified membership whereby membership in one level of the affiliated unions requires membership in the others.

46. The defendant Board of Education has actual knowledge that the defendant unions require a unified membership, and that portions of the union fees seized from the pay of its certificated employees benefit the defendant unions.

47. The constitution and bylaws of the JCTA provide in Article II rules concerning membership, stating in Section II that membership is available to certificated employees of the Board "when evidence of membership in KEA and NEA is received and an official plan is signed authorizing payment of dues of the unified profession" thus constitutionally requiring individual affirmative and voluntary consent to membership and the deduction of dues.

48. On information and belief, the constitutions of both the NEA and the KEA condition eligibility for union membership on individual affirmative consent.

49. The CBA provisions for automatic union membership and the defendants' implementing policies violate the JCTA constitution and bylaws provisions concerning JCTA membership.

50. The constitution and bylaws of the JCTA expressly impose financial and other obligations on all JCTA members, including obligations to support and promote the stated purposes of the JCTA and to pay dues to the defendants KEA and NEA. They also provide procedures for imposing censure on JCTA members.

51. Each of the three defendant unions purport to speak on behalf of the plaintiffs and all class members, and take positions on controversial social and political issues.

52.  The JCTA's constitution and bylaws do not describe any voluntary means of resigning from membership.

53.  The CBA provides no means of resigning from JCTA membership after the initial ten day calendar period, or of discontinuing the seizure of dues once begun, throughout the duration of the CBA's five year term.

54.  The defendants Board of Education and JCTA have established practices and policies implementing the CBA.

55.  It is the practice and policy of the defendants Board of Education and JCTA during the term of the CBA to refuse to honor any resignation by a certificated employee from membership in JCTA and/or any attempt to discontinue seizure of dues for the defendant unions after the ten day period.

56.  It is the practice and policy of the defendants Board of Education and JCTA during the term of the CBA to deem certain certificated employees to be JCTA members, and to seize money from the pay of such employees for the defendant unions, without individual affirmative consent from such employees.

57.  Plaintiffs Sherry Hoza, Joseph Chappell, Lisa Trover, and Michael Daniel have sought to resign from membership in the JCTA and to discontinue the seizures from their pay for the defendant unions.

58.   The defendants JCTA and Board of Education refused to honor the resignations from JCTA or to stop the union fee seizures.

59.   Plaintiff Sherry Hoza has not granted individual affirmative consent to membership in JCTA, KEA or NEA, nor granted individual affirmative consent to seizure of union dues from her pay.

60.   The defendant Board has continued to seize union dues from the pay of Sherry Hoza, Joseph Chappell, Lisa Trover, and Michael Daniel for the benefit of defendant JCTA and its affiliated unions at the expense and deprivation of the individual plaintiffs.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF:
### DEPRIVATION OF CONSTITUTIONAL RIGHTS (SUBCLASS A)
(Violation of 42 U.S.C. § 1983 and the United States Constitution)

The subclass A plaintiffs reassert the foregoing and further allege:

61.   The defendants acting in concert under color of state regulation, custom and usage, have through their practices, policies and application of the terms of Article 4 Section F and Article 34 of the CBA, deprived and threaten to continue to deprive the plaintiffs of their rights, privileges, and immunities granted by the First, Fifth, and Fourteenth Amendments to the United States Constitution, and violated 42 U.S.C. § 1983, (1) by refusing to honor resignations from union membership of the subclass A plaintiffs, (2) by stating that the subclass A plaintiffs cannot resign from union membership or terminate union payroll deductions until July 2010, and (3) by continuing

to seize money for the benefit of the defendant unions from the pay of the subclass A plaintiffs even after such employees have attempted to resign or dissociate from union membership, or terminate union payroll deductions. (The CBA terms, practices and policies described in this paragraph are referred to herein as the defendants' "forced maintenance of union membership and dues seizure policies.")

62. The defendants' forced maintenance of union membership and dues seizure policies, as applied to the subclass A plaintiffs, are unconstitutional in that they both create a chilling effect and work a prior restraint upon the subclass A plaintiffs' exercise of their rights to association, self-organization, assembly, petition, and freedoms of speech, thought, and conscience, as guaranteed by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.

63. In the alternative, if there is, somehow, a compelling state interest in forcing public school employees for the multiple-year duration of a collective bargaining agreement to maintain membership in a labor organization against their will and/or involuntarily pay fees to a union in an amount set by the union, there is no compelling state interest justifying the requirement of involuntary fee payers being forced to pay for the union's political, ideological, and other nonbargaining activities.

64. As a result of the defendants' forced maintenance of union membership and dues seizure policies, as applied, the subclass A plaintiffs:

     a. have been prevented from exercising their rights and privileges as citizens of the United States to resign from a private organization with which they do not agree;

     b. have been prevented from exercising their rights and privileges as citizens of the United States not to pay dues to a private organization with which they do not agree, or in the alternative, not to pay for any political, ideological, and nonbargaining activity which they oppose.

     c. have been deprived of their civil rights guaranteed to them under the statutes of the United States; and

     d. have suffered monetary damages in the amount of dues collected from them, or alternatively, for the amount of dues spent on political, ideological, and nonbargaining activities to which they object.

65. If not enjoined, the defendants and their agents will continue the aforesaid deprivation and abridgement of the constitutional rights of the subclass A plaintiffs, thereby causing irreparable harm, damage, and injury to these plaintiffs for which there is no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
## DEPRIVATION OF CONSTITUTIONAL RIGHTS (SUBCLASS B):
(Violation of 42 U.S.C. § 1983 and the United States Constitution)

The subclass B plaintiffs reassert the foregoing and further allege:

66. The defendants acting in concert under color of state regulation, custom and usage, have through their practices and policies and application of the terms of Article 4 Section F and Article 34 of the CBA, deprived and threaten to continue to deprive the plaintiffs of their rights, privileges, and immunities granted by the First, Fifth, and Fourteenth Amendments to the United States Constitution, and violated 42 U.S.C. § 1983, (1) by transforming or purporting to transform the subclass B plaintiffs into union members, with all obligations thereof, without their individual affirmative consent; and (2) by seizing money for the benefit of the defendant unions from the pay of the subclass B plaintiffs without their individual affirmative consent to union membership or to such seizure. (The CBA terms, practices and policies described in this paragraph are referred to herein as the defendants' "automatic union membership and dues seizure policies.")

67. The defendants' automatic union membership and dues seizure policies, as applied to the subclass B plaintiffs, are unconstitutional in that they both create a chilling effect and work a prior restraint upon the plaintiffs' exercise of their rights to association, self-organization, assembly, petition, and freedoms of speech, thought, and conscience, as guaranteed by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.

68. In the alternative, if there is, somehow, a compelling state interest in transforming public school employees into members of a labor

union without their consent and seizing union dues or fees from their pay for the duration of the collective bargaining agreement, there is no compelling state interest justifying the requirement that involuntary union members pay for the defendant unions' political, ideological, and other nonbargaining activities against their will.

69.  As a result of the defendants' automatic union membership and dues seizure policies, the subclass B plaintiffs:

      a.  have been prevented from exercising their rights and privileges as citizens of the United States to affirmatively chose and consent to associate with a private organization;

      b.  have been prevented from exercising their rights and privileges as citizens of the United States to affirmatively consent to pay dues to a private organization, or alternatively, not to pay for any political, ideological, and nonbargaining activity which they oppose;

      c.  have been deprived of their civil rights guaranteed to them under the statutes of the United States; and

      d.  have suffered monetary damages in the amount of dues collected from them, or alternatively, for that amount of dues spent on political, ideological, and nonbargaining activities to which they object.

70.  If not enjoined, the defendants and their agents will continue the aforesaid deprivation and abridgement of the constitutional rights of the subclass B plaintiffs, thereby causing irreparable harm, damage, and injury to these plaintiffs for which there is no adequate remedy at law.

### THIRD CLAIM FOR RELIEF:
### DECLARATORY JUDGMENT ON INTERPRETATION
### OF A WRITTEN CONTRACT (ENTIRE CLASS):
(Kentucky Declaratory Judgment Act, KRS 418.040 *et seq.*)

The plaintiffs reassert the foregoing and further allege:

71.  The individual and class plaintiffs herein are persons interested in the CBA, a written contract, and in the related practices and policies of the Board of Education of Jefferson County, Kentucky, all of which purport to affect their rights.

72.  An actual, current and bona fide controversy exists between the parties hereto.

73. It is outside the legitimate scope of the Board's authority to enter agreements that are contrary to law, and any such action is <u>ultra</u> <u>vires</u>.

74.  An agreement between a board of education and a labor union which has the effect of imposing exclusive representation on public school employees is beyond the authority of the board, contrary to law, null and void.  <u>Fayette County Educ. Assn. v. Hardy</u>, 626 S.W.2d 217, 220 (Ky. Ct. App. 1980).

75.   The CBA in Article 3 purports to establish the defendant JCTA as the "official representative" of every certificated employee of the Board, regardless of voluntary membership in defendant JCTA or individual affirmative consent or objection to such representation.

76.   The CBA, taken as a whole, has the effect of establishing the defendant JCTA as exclusive representative of every certificated employee, regardless of his or her affirmative consent.

77.   The provisions of the CBA and the defendants' practices and policies which have the effect of imposing exclusive representation by the JCTA on certificated employees, are contrary to Kentucky law, <u>ultra</u> <u>vires</u>, null and void.

78.   The provisions of the CBA and the defendants' practices and policies which have the effect of restricting certificated employees from exercising their right as public sector employees under state law to choose their own representative or to choose to be unrepresented by a labor organization, are contrary to Kentucky law, <u>ultra</u> <u>vires</u>, null and void.

**FOURTH CLAIM FOR RELIEF:**
**DECLARATORY JUDGMENT ON INTERPRETATION**
**OF A WRITTEN CONTRACT (SUBCLASS B):**
(Kentucky Declaratory Judgment Act, KRS 418.040 *et seq.*)

The plaintiffs reassert the foregoing and further allege:

79.   The subclass B plaintiffs herein are persons interested in the CBA, a written contract, and in the related practices and policies of the Board

of Education of Jefferson County, Kentucky, all of which purport to affect their rights.

80.  An actual, current and bona fide controversy exists between the parties hereto.

81.  Under Kentucky law a private organization is powerless to enter into an agreement which violates the terms of its own charter; such an <u>ultra vires</u> agreement is null and void.

82.  The constitution and bylaws of the JCTA require for membership individual affirmative consent and a signed official plan "authorizing the payment of dues to the unified profession."

83.  On information and belief, the constitutions of the NEA and KEA likewise require individual affirmative consent for membership.

84.  The JCTA entered into the CBA which authorizes and imposes nonconsensual automatic union membership and involuntary dues seizures on certain certificated employees.

85.  These provisions of the CBA violate the defendant unions' own constitutional requirements for membership, and exceed the legitimate scope of authority of the JCTA, and are accordingly <u>ultra vires</u>, null and void.

**FIFTH CLAIM FOR RELIEF:**
**UNJUST ENRICHMENT BY THE DEFENDANT UNIONS**
**(SUBCLASSES A & B):**
(Violation of the Common Law of the Commonwealth of Kentucky)

The plaintiffs reassert the foregoing and further allege:

86. The subclass A and subclass B plaintiffs have been and are being deprived the use and benefit of certain moneys regularly seized from their pay, without their individual affirmative and unrevoked consent to union membership and/or deduction of union fees, for the benefit of the defendant unions.

87. This ongoing deprivation is based on unconstitutional, unlawful, _ultra_ _vires_, null and void provisions of the CBA, specifically its forced maintenance of union membership and dues seizure provisions, its automatic union membership and dues seizure provisions, and its provisions imposing exclusive representation on certificated employees.

88. The dues seized from the pay of the subclass A and subclass B plaintiffs constitute benefits which have been and regularly are being conferred upon the defendant unions, at the request and agreement of the defendant unions.

89. The defendant unions have appreciated, understood, willfully retained and been enriched by these benefits.

90. Kentucky law prohibiting agreements which impose exclusive representation on public school employees, and Kentucky law regarding the _ultra_ _vires_ nature of actions which exceed and/or violate an entity's charter, is longstanding, clear and established, as are the U.S. Constitutional rights and protections raised herein.

91. The subclass A plaintiffs, by seeking to resign and/or dissociate from the JCTA, have revoked any acceptance of representation by JCTA or payment of dues obligation.

92. The subclass B plaintiffs have not voluntarily and affirmatively consented to membership in JCTA or payment of dues obligation.

93. For each of the foregoing reasons, it is inequitable for the defendant unions to retain the benefit of such moneys, without payment for their value, from the subclass A and subclass B plaintiffs, who have suffered deprivation by the improper dues seizures.

94. Alternatively, as to the constitutional basis, it is inequitable for the defendant unions to retain the pro rata portion of funds seized from the pay of the subclass A and subclass B plaintiffs corresponding to percentage of the defendant unions' expenditures on political, ideological, and nonbargaining activities without their individual affirmative and unrevoked consent in violation of their rights under the First, Fifth and Fourteenth Amendments to the U.S. Constitution.

## PRAYER FOR RELIEF

WHEREFORE the plaintiffs pray for judgment and relief as follows:

**A. Class Certification:** Determining that this action is a proper class action; certifying as defined herein and for the respective stated causes of action the class and the two subclasses A and B as an opt-out class and subclasses respectively; certifying the named plaintiffs as representatives of

the class; further certifying plaintiffs Sherry Hoza, Joseph Chappell, Lisa Trover, and Michael Daniel as subclass A representatives; and certifying plaintiff Sherry Hoza as subclass B representative; under Rule 23 of the Federal Rules of Civil Procedure.

**B. Declaratory Judgment**: Declaring, based upon the actual, current, and bona fide controversy between the parties as to the legal relations among them:

1. For the First Claim for Relief, that Article 4 Section F of the CBA as applied through the defendants' forced maintenance of union membership and dues seizure policies unconstitutionally abridges the rights of the subclass A plaintiffs under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States;

2. For the Second Claim for Relief, that Article 4 Section F of the CBA as applied through the defendants' automatic union membership and dues seizure policies unconstitutionally abridges the rights of the subclass B plaintiffs under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States;

3. For the Third Claim for Relief, (a) that all provisions of the CBA and the defendants' practices and policies which have the effect of imposing exclusive representation upon certificated employees are contrary to Kentucky law, *ultra vires*, null and void; and (b) that all provisions of the CBA and the defendants' practices and policies

which have the effect of restricting certificated employees from exercising their right as public sector employees under state law to choose their own representative or to choose to be unrepresented by a labor organization, are contrary to Kentucky law, <u>ultra</u> <u>vires</u>, null and void;

4.    For the Fourth Claim for Relief, that all provisions of the CBA which have the effect of authorizing or imposing membership and dues payment obligations on certificated employees without their individual affirmative consent are contrary to the constitution and bylaws of the JCTA, <u>ultra</u> <u>vires</u>, null and void.

5.    In the alternative, for the First and Second Claims for Relief, that the First and Fourteenth Amendments of the U.S. Constitution (a) prohibit the defendants from requiring objecting certificated employees to pay for the unions' political, ideological, and other nonbargaining activities; and (b) mandate that the JCTA must give adequate notices and disclosures to certificated employees before seeking to collect and/or collecting compelled dues or fees.

**C. Injunctive**:

1.    A preliminary injunction prohibiting the defendants from seizing or seeking to collect any union dues or fees directly or indirectly from any of the plaintiffs until further order of this Court.

2.    A permanent injunction prohibiting the defendants, their officers, employees, agents, attorneys, and all other persons in active concert with them, from:

a.    engaging in any of the activities listed in Part B above which the Court declares illegal;

b.    requiring any subclass A plaintiff to maintain union membership against his or her will;

c.    purporting to transform any subclass B plaintiff into a union member without his or her individual affirmative consent;

d.    taking action which has the effect of establishing exclusive representation of certificated employees;

e.    seizing money for the benefit of the defendant unions from the pay of any class member who affirmatively states that he or she does not wish to be represented by the defendant unions; or

f.    in the alternative, requiring any objecting certificated employee to pay for the political, ideological, and other nonbargaining activities of the JCTA and/or its affiliates;

3.    A permanent injunction requiring the defendants, their officers, employees, agents, attorneys, and all other persons in active concert with them, to:

a.      expunge Article 4 Section F of the CBA, Article 3 of the CBA, and all other CBA provisions which have the effect of imposing exclusive representation on the plaintiff class or are otherwise contrary to law for the reasons raised herein;

b.      honor each request to resign from union membership received within the applicable statute of limitations period from any certificated employee within subclass A, nunc pro tunc to the date first received by either the Board or the JCTA or their officers or agents;

c.      refund to each certificated employee within subclass A all union dues seized from his or her pay after the effective date of the employees' resignation from union membership;

d.      notify all certificated employees within subclass B that, because they have never given individual affirmative consent to union membership and/or dues deduction, they have the right to refund of the money seized from their pay during the term of the CBA for the benefit of the defendant unions, unless they affirmatively waive that right to refund, and that they may apply to join the defendant unions at any time now or in the future subject to the internal rules of the defendant unions;

e.      stop seizing money for the benefit of the defendant unions from the pay of any certificated employee within subclass B, unless and until such employee has given individual affirmative consent to union membership and/or deduction of union dues;

f.      refund to each certificated employee within subclass B all money seized from his or her pay during the term of the CBA for the benefit of the defendant unions, unless such employee affirmatively waives the right to refund; and

g.      publicly and prominently post notices stating (i) that the defendants will not interfere with the rights of any certificated employee to join, or to refrain from joining, any labor organization he or she individually chooses, (ii) that the defendants will honor the right of each certificated employee to resign from union membership at will and terminate payroll dues deductions, (iii) that the defendants will not attempt to transform employees into union members without their individual affirmative consent, (iv) that the defendants will not attempt to force certificated employees to be represented by a union against their will; (v) that the Board of Education will not recognize the JCTA as the exclusive representative of all certificated employees, but only as the representative of its

voluntary members and/or those certificated employees who affirmatively consent to representation; and (vi) that the Board of Education and the JCTA will not enter into agreements which exceed the lawful and legitimate scope of their respective authority; or

h.    in the alternative, refund all those dues, seized from the pay of subclass A and/or subclass B plaintiffs without individual affirmative and unrevoked consent during the term of the CBA, which the defendant unions are unable to establish should be attributed to legitimate costs of collective bargaining, contract administration and grievance adjustment, and provide notices of their rights under *Teachers Local No. 1 v. Hudson*, 475 U.S. 292 (1986).

**D.  Monetary**:  A monetary judgment for the following, with pre- and post-judgment interest at the rate allowed by law:

1.    For the First Claim for Relief, a judgment against the defendants, jointly and severally, awarding each subclass A plaintiff compensatory damages for the injuries sustained as a result of the defendants' unlawful interference with and deprivation of his or her constitutional and civil rights including, but not limited to, the amount of dues deducted from his or her wages within the statute of limitations period after he or she attempted to resign from the union

and/or to stop dues seizures, and such other amounts as the principles of justice and equity warrant;

2.     For the Second Claim for Relief, a judgment against the defendants, jointly and severally, awarding each subclass B plaintiff compensatory damages for the injuries sustained as a result of the defendants' unlawful interference with and deprivation of his or her constitutional and civil rights including, but not limited to, the amount of dues seized from his or her wages within the statute of limitations period, and such other amounts as the principles of justice and equity warrant;

3.     For the Fifth Claim for Relief, a judgment against the defendant unions, jointly and severally, awarding each subclass A and/or B plaintiff equitable damages for the injuries sustained within the statute of limitations period as a result of the defendants' unjust enrichment including, but not limited to, the amount of dues deducted during the term of the CBA from his or her wages without his or her individual affirmative and unrevoked consent, and such other amounts as the principles of justice and equity warrant;

4.     In the alternative, for the First, Second, and Fifth Claim for Relief, a judgment against the defendant unions, jointly and severally, awarding each subclass A and/or B plaintiff monetary damages in the amount of the pro rata portion of funds seized during

the statute of limitations period from his or her pay corresponding to share of the defendant unions' expenditures over the same period which the defendant unions are unable to establish should be attributed to legitimate costs of collective bargaining, contract administration and grievance adjustment.

**E.  Attorneys' Fees and Costs**:  A judgment awarding plaintiffs costs, including reasonable attorneys' fees under 42 U.S.C. § 1988; and

**F.  Other**:  Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Derek A. Poteet, Esq. (applicant to be
   admitted pro hac vice)
Milton L. Chappell, Esq. (applicant to
   be admitted pro hac vice)
National Right to Work Legal Defense
   Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, VA  22160
Tel. (703) 321-8510
Fax (703) 321-9319
dap@nrtw.org
mlc@nrtw.org

*/s/  Norbert J. Arrington*
Richard L. Masters, Esq.
Norbert J. Arrington
Masters, Mullins & Arrington
1012 South Fourth Street
Louisville KY 40203
Tel. (502) 582-2900
Fax (502) 587-0931
nja322@aol.com
*Counsel for Plaintiffs*

35