UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO.: 3:09CV-764-M

SHERRY HOZA, et al.                                                         PLAINTIFFS

v.

JEFFERSON COUNTY TEACHERS
ASSOCIATION, et al.                                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon motions to dismiss by the defendants, Jefferson County Teachers' Association ("JCTA"), Kentucky Education Association ("KEA"), National Education Association ("NEA") [DN 12], and the defendant, Board of Education of Jefferson County, Kentucky ("JCBE") [DN 14]. Fully briefed, these motions are ripe for decision.

### I.  BACKGROUND

The plaintiffs brought a class action complaint on behalf of themselves and those similarly situated alleging that the defendants, among other things, violated their rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. In particular, the plaintiffs allege that at the time they filed their complaint they were each employed in the Jefferson County Public Schools by JCBE. (Class Action Compl. ¶ 9.) And that as a result of being certificated employees,[1] they were automatically subject to the terms of a collective

---

[1] The collective bargaining agreement defines a certificated employee as one who "possess[es] a certificate issued by the Commonwealth of Kentucky." (CBA Art. 1, ¶ 24.)

bargaining agreement ("CBA") negotiated between JCBE and JCTA.² (Id. ¶ 37.) According to the plaintiffs

> the CBA requires the Board to seize union fees from a certificated employee's wages and transforms the employee into a JCTA member, unless the employee, within the first ten calendar days after the effective date of the CBA and/or acceptance of employment, in writing declines JCTA membership and gives notice that union fees are not to be deducted from his or her wages.

(Id. ¶ 40.) By automatically becoming members of JCTA, in addition to having dues automatically deducted from their wages pursuant to the CBA, the plaintiffs and other certificated employees are required to "support and promote the stated purposes of the JCTA and to pay dues to the defendants KEA and NEA." (Id. ¶ 50.) According to the plaintiffs, the JCTA, KEA, and NEA "purport to speak on behalf of the plaintiffs and all class members, and take positions on controversial social and political issues" without giving its members "any voluntary means of resigning from membership." (Id. ¶¶ 51-52.) At the time the complaint was filed, each of the plaintiffs had requested that their union memberships be terminated and that their automatic dues deductions be discontinued. (Id. ¶¶ 57-58.) The defendants refused to honor the plaintiffs' requests. (Id.)

Although unclear from their complaint, it appears that plaintiffs, Joseph Chappell, Lisa Trover, and Michael Daniel, at some point gave "affirmative consent" to join the JCTA and to have dues automatically deducted from their wages. However, when they later requested, like the additional plaintiff, Sherry Hoza, that their union memberships be terminated, such request

---

² The KEA and NEA are, respectively, the state and national affiliates of the JCTA. (Class Action Compl. ¶¶ 10-12.)

was refused. Based upon these allegations, the plaintiffs' proposed subclass A would include all employees who have had dues automatically deducted from their wages and who have requested resignation from the JCTA, and have had that request refused. (Id. ¶¶ 22-28.) In subclass A's claim for relief, the plaintiffs maintain that "[t]he defendants' forced maintenance of union membership and dues seizure policies . . . are unconstitutional in that they both create a chilling effect and work a prior restraint upon the . . . exercise of their rights to association, self-organization, assembly, petition, and freedoms of speech, thought, and conscience, as guaranteed by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States" and further, that "there is no compelling state interest justifying the requirement of involuntary fee payers being forced to pay for the union's political, ideological, and other nonbargaining activities." (Id. ¶¶ 62-63.) The plaintiffs further allege that the defendants are "acting in concert under color of state regulation, custom and usage." (Id. ¶ 61.)

Sherry Hoza, unlike the other plaintiffs, never gave her "affirmative consent" to join the JCTA nor to have dues automatically deducted from her wages. Yet, like the other plaintiffs, the JCTA refused to accept her resignation. She proposes to represent subclass B–those members of the JCTA who have had dues automatically deducted from their wages, yet from whom JCTA never received "affirmative consent" to become a member of the organization. (Id. ¶¶ 29-35.) In subclass B's claim for relief, the plaintiffs contend that the defendants, who were "acting in concert under color of state regulation, custom and usage," have similarly violated their rights under the First, Fifth, and Fourteenth Amendments to the Constitution. (Id. ¶¶ 66-68.)

The plaintiffs' prayer for relief requests six remedies.  They first request class certification of proposed subclasses A and B.  They seek a judgment declaring that the actions of the defendants violated their First, Fifth, and Fourteenth Amendment rights.  They seek further relief in the form of preliminary and permanent prospective injunctive relief to prohibit the plaintiffs from taking such unconstitutional actions in the future, to require the defendants to conform the CBA to the requirements of the Constitution, to require the defendants to honor members' requests for resignation, and to require the defendants to refund appropriate dues.  They also request a monetary judgment in the amount of dues automatically deducted from the plaintiffs' wages within the limitations period, attorney's fees and costs, and such other relief as the Court may deem just and proper.

In their motion to dismiss, the defendants contend that subsequent actions that they have taken following the filing of the plaintiffs' complaint have mooted the plaintiffs' federal claims.  "On November 10, 2009, JCTA accepted the resignations of the named Plaintiffs in this action–Sherry Hoza, Joseph Chappell, Lisa Trover, and Michael Daniel–effective immediately.  Because JCTA requires unified membership in its state and national affiliates, those resignations immediately terminated the Plaintiffs' membership in the [KEA] and the [NEA], as well."  (Decl. DeeAnn Flaherty ¶ 2.)  Furthermore, "[u]pon accepting the Plaintiffs' resignations . . ., JCTA also terminated the automatic deduction of each Plaintiff[s'] . . . membership dues" and "issued each Plaintiff a check for all membership dues paid from October 2008 to the date of resignation, with interest, plus one dollar."[3] (Id. ¶¶ 3-4.)  Additionally, JCTA, on November

---

[3] Interest was initially paid at the rate of 2%.

6, 2009, sent an announcement to its current members allowing the members to "resign from membership immediately, and at any time up to December 31, 2009, with dues deductions to cease upon resignation" with "another opportunity to resign during the 2010-2011 school year." (Id. ¶¶ 5.) Subsequently, the defendants tendered an additional payment to the plaintiffs equivalent to 8% interest. (JCTA Reply, Ex. A.) The defendants argue that they have provided all the relief that the plaintiffs have requested and that the case should be dismissed for lack of subject matter jurisdiction.

## II. DISCUSSION

The parties do not appear to dispute, and the Court finds, that at the outset of this litigation, the plaintiffs alleged a sufficient case or controversy to have standing under Article III of the United States Constitution. See Steel Co. v. Citizens for a Better Government, 523 U.S. 83, 102 (1998) ("Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'"). The plaintiffs have the burden of establishing Article III standing, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), which requires proof of three elements–that "(1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant[s]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). Here, the plaintiffs have alleged a sufficient injury in fact; they were compelled to join an organization that expressed ideological views with which they disagreed and that dues of those

5

organizations were automatically and unlawfully deducted from their wages. They have alleged that this compelled membership and dues deductions took place at the direction of and pursuant to the terms of a collective bargaining agreement negotiated by the defendants acting under color of state law. And finally, they have sought relief that would compensate them for their past injuries (money damages) and that would prevent any further injury from occurring (injunction).

But it is not enough that the plaintiffs had standing at the outset of the litigation; "the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition." 13B Charles Alan Wright et al., Federal Practice and Procedure § 3533 (3d ed. 2008); Gottfried v. Med. Planning Servs., Inc., 280 F.3d 684, 691 (6th Cir. 2002). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979); Brock v. Int'l Union, UAW, 889 F.2d 685, 690 (6th Cir. 1989) ("Mootness is determined by examining whether an actual controversy between the parties exists in light of intervening circumstances.") (quotation omitted). The Court must judge whether a case or controversy exists "separately for each form of relief sought." Laidlaw, 528 U.S. at 185 (citing City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)); see also Henschen v. Houston, 959 F.2d 584, 587 (5th Cir. 1992) ("Justiciability must be analyzed separately on the issues of money damages and the propriety of equitable relief.") (citation omitted).

### A. DECLARATORY JUDGMENT/PROSPECTIVE INJUNCTIVE RELIEF

In their prayer for relief, the plaintiffs seek a declaration that the forced and automatic union membership and "dues seizure" policies of the collective bargaining agreement violate the First, Fifth, and Fourteenth Amendments to the Constitution. In furtherance of such declaration, the plaintiffs seek prospective injunctive relief to prevent the defendants from engaging in activities that the Court declares unconstitutional and to reform the collective bargaining agreement to comply with the mandates of the Constitution. The defendants argue that these requests for declaratory and prospective injunctive relief are moot because the plaintiffs are no longer members of the union and, therefore, they no longer have an interest in the policies and procedures of the collective bargaining agreement. Conversely, the plaintiffs argue that various long-recognized exceptions to the mootness doctrine apply.

*1. Voluntary Cessation*

The main exception relied upon by the plaintiffs, voluntary cessation, provides that under certain circumstances, "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Laidlaw, 528 U.S. at 189 (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). Therefore, in Laidlaw, a defendant's voluntary compliance with environmental laws after an action was commenced alleging a violation of those laws did not moot the case; a case does not become moot where the defendant is simply "'free to return to his old ways.'" Id. (quoting City of Mesquite, 455 U.S. at 289 n.10).

Similarly, in Chicago Teachers Union v. Hudson, 475 U.S. 292 (1986), the Supreme

7

Court held that a union's abandonment of challenged conduct did not moot a claim for prospective injunctive relief. There, the plaintiffs alleged that a procedure implemented by the teacher's union to ensure that dues were not being used to finance ideological activities unrelated to collective bargaining as mandated by the Supreme Court in <u>Abood v. Detroit Bd. of Educ.</u>, 431 U.S. 209 (1977), was unconstitutional. <u>Hudson</u>, 475 U.S. at 294-97. In particular, the union had implemented a grievance procedure whereby members of the union could object to certain expenditures, and if successful, could obtain a rebate of that portion of dues that were used to fund the expenditures. <u>Id.</u> The district court found that the procedure did not violate the First Amendment. <u>Id.</u> at 298.

On appeal to the Seventh Circuit, the union notified the court that it was no longer utilizing the grievance procedure; instead, it voluntarily placed all of the dissenters' dues into escrow, thereby avoiding any danger that their constitutional rights would be violated. <u>Id.</u> at 299. The Seventh Circuit subsequently reversed the district court. <u>Id.</u> Addressing the grievance procedure on the merits, the Seventh Circuit unanimously found that it violated the First Amendment. <u>Id.</u> The court concluded that the matter was not moot because "the Union had made no commitment to continue the escrow in the future, had not indicated the terms of the escrow, and, in all events, the terms cannot be left entirely up to the Union." <u>Id.</u> at 300. Agreeing that there was jurisdiction to address the constitutionality of the grievance procedure, the Supreme Court held:

> It is clear that voluntary cessation of allegedly illegal conduct does not moot a case. The same concerns–the fear that a defendant would be free to return to his old ways, and that he would have a powerful weapon against public law enforcement–dictate that we review the legality of the practice defended before

8

the District Court.

Id. at 305 n.14 (internal citations and quotations omitted).

Although a case is not generally mooted by the voluntary cessation of the challenged conduct, it may nevertheless become moot "'if subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Laidlaw, 528 U.S. at 189 (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)). This is because federal courts are simply "without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (citing Oil Workers Unions v. Missouri, 361 U.S. 363, 367 (1960)). To determine whether conduct could reasonably be expected to recur, "[p]redictions must be made as to the probability of recurrence, the magnitude of any injury that would result, and the feasibility of preventing any injury by a future suit." 13C Charles Alan Wright, et al., Federal Practice & Procedure § 3533.5 (3d ed. 2008). "If there is a high likelihood of recurrence, the case should not be deemed moot; if very low, mootness ought to follow." Adams v. Bowater Inc., 313 F.3d 611, 613 (1st Cir. 2002).

This is a case where the likelihood of recurrence falls on the low end of the spectrum.[4] Unlike Chicago Teachers Union, where the plaintiffs, who were still paying monthly union fees,

---

[4] The plaintiffs argue that the case is not moot because there are still others that are subject to the allegedly unconstitutional actions of the defendants. "That may well be so, but the Article III question is not whether the requested relief would be nugatory as to the world at large, but whether [these plaintiffs have] a stake in that relief." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 479 (1990). Therefore, the plaintiffs must establish that *they* rather than others have a "'specific live grievance' against the application of the" collective bargaining agreement. Id. (quoting Golden v. Zwickler, 394 U.S. 103, 110 (1969)).

would be injured if the defendants chose to "return to their old ways,"[5] this case presents a much different factual framework. Here, the defendants have accepted the plaintiffs resignation from the unions and, as a result, union dues are no longer being deducted from the plaintiffs' wages. Pursuant to the terms of the current collective bargaining agreement, the defendants, by accepting the plaintiffs resignation, can no longer deduct dues from their wages without the plaintiffs' consent. (See CBA Art. 4, § F.)

The plaintiffs also point out that the current collective bargaining agreement expires on June 30, 2010. They posit that upon adoption of a new collective bargaining agreement, the defendants might again require all certificated employees to become members of the union without their consent, and automatically deduct dues from their wages. They argue that it is within the power of the Court to prevent future violations of the Constitution, even where the allegedly unlawful conduct has ceased. See United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953) ("Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct.") (citation omitted). But "a suggestion that defendants might resume the earlier practices is much too speculative and unlikely to support a live controversy." Winokur v. Bell Fed. Sav. & Loan Ass'n, 560 F.2d 271, 275 (7th Cir. 1977). Furthermore, the plaintiffs are challenging the constitutionality of the provisions of the current collective bargaining agreement. And under the current collective bargaining agreement, these plaintiffs are no longer members of the union, and therefore, no longer subject

---

[5] A decision by the teachers union to "return to its old ways" would have impacted the plaintiffs in Chicago Teachers Union because union fees were still being deducted from their wages.

to the allegedly unlawful conduct. There is no need to grant an injunction to prevent future constitutional violations because the plaintiffs will not be subject to such violations. If and when a new agreement commences, the plaintiffs may bring an action challenging the terms of that agreement if they have standing to do so.

   2. *Capable of Repetition Yet Evading Review*

Of course, where a defendant's conduct is capable of repetition, as the plaintiffs suggest of the defendants' conduct, an otherwise moot claim will not be considered moot if the defendant's conduct will evade review. Spencer v. Kemna, 523 U.S. 1, 17-18 (1998) (citation omitted). The exception only applies "where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Id. at 17 (internal quotation and markings omitted). Neither condition is satisfied here. The collective bargaining agreement challenged by the plaintiffs has a duration of five years and the plaintiffs do not suggest that future collective bargaining agreements would have a shorter duration. This is more than sufficient time to fully litigate the constitutionality of the agreement's provisions. And it would be mere speculation to suggest that these plaintiffs would again be subject to the same challenged conduct. The terms of the 2010 collective bargaining agreement have not been negotiated and, in addition, the defendants note that they have a policy to carry forward an employee's resignation into a new collective bargaining term unless the employee instructs otherwise. (See DN 22 at 6.)

## B. MONEY DAMAGES

Although the plaintiffs' claim for injunctive relief is moot, their "inability to obtain injunctive relief . . . ha[s] no impact on the[ir] damages claim." Laidlaw, 528 U.S. at 197 (citing Lyons, 461 U.S. at 105 n.6). Therefore, the Court will separately consider whether the plaintiffs' claim for money damages has also become moot. Here, the plaintiffs sought and the defendants have tendered the requested amount of dues that were deducted from their wages during the limitations period. They sought and the defendants have tendered the requested amount of prejudgment interest on the dues that were deducted.[6] "Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." Holstein v. City of Chicago, 29 F.3d 1145, 1147 (7th Cir. 1994) (quotation omitted). Thereafter, "full-blown litigation would yield no recovery greater than that voluntarily offered by defendants, and a live controversy no longer exists between the parties." Weisman v. Darneille, 79 F.R.D. 389, 391 n.3 (S.D.N.Y. 1978); cf. Brunet v. City of Columbus, 1 F.3d 390, 399 (6th Cir. 1993) ("Settlement of a plaintiff's claims moots an action.") (quotation omitted).

## C. CLASS ALLEGATIONS

Because the substantive claims of the putative class representatives are moot, so too, is their claim for class certification.

---

[6] Although the defendants initially tendered 2% interest, they increased their tender to 8% after the plaintiffs suggested in their response that 2% was insufficient to satisfy Kentucky's legal rate of interest. KRS 360.010.

> Admittedly, special mootness rules exist for class actions. *Once a class is certified*, the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists. Where, on the other hand, the named plaintiff's claim becomes moot before certification, dismissal of the action is required.

Brunet, 1 F.3d at 399 (citations omitted) (emphasis in original). Although having had an adequate opportunity to substitute a class representative and seek class certification, the plaintiffs have failed to do so. Pursuant to Brunet, therefore, the plaintiffs claim for class certification is moot.

### D. ATTORNEY'S FEES/COSTS

The plaintiffs' ancillary claims for attorney's fees and costs also do not prevent their substantive claims from being rendered moot. See, e.g., Brock, 889 F.2d at 695 ("the continuing viability of a claim for an award of ancillary costs does not avert the mootness of underlying substantive issues.") (citation omitted); S-1 v. Spangler, 832 F.2d 294, 297 n.1 (4th Cir. 1987) ("The fact that the parents still assert a claim for costs and attorney's fees against the State Board and Spangler does not avert mootness of the underlying action on the merits.") (citations omitted).

\* \* \* \* \*

Having concluded that the plaintiffs' federal claims are moot, they must be dismissed for a lack of subject matter jurisdiction. Pursuant to United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), the Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims. Id. at 726 ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Brooks

v. Rothe, 577 F.3d 701, 709 (6th Cir. 2009).

## III. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the motions by the defendants Jefferson County Teachers' Association, Kentucky Education Association, National Education Association [DN 12], and the defendant, Board of Education of Jefferson County, Kentucky [DN 14] are **GRANTED**. A Judgment will be entered accordingly.


cc: Counsel of Record